IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO CERDA,<br><br>          Plaintiff,<br>     vs.<br><br>UNITED BROTHERHOOD OF<br>CARPENTERS AND JOINER OF<br>AMERICA, et al ,<br><br>          Defendants.<br>_____/ | CASE NO. CV-F-05-00616 OWW LJO<br><br>**ORDER ON PLAINTIFF'S<br>MOTION TO REMAND** (Doc. 17) |

The above entitled action was removed to this Court on May 9, 2005. On May 13, 2005, plaintiff Armando Cerda filed a motion to remand this action to State court on May 13, 2005. The District Court Judge assigned to this matter reassigned the motion to remand to Department 6, Magistrate Judge Lawrence O'Neill. On June 7, 2005, defendants Northern California Carpenters Regional Counsel and Jason Phillips filed an opposition. On June 8, 2005, defendant United Brotherhood of Carpenters and Joiners of America filed an opposition. On June 16, 2005, plaintiff filed his reply. The matter came on regularly for hearing on June 24, 2005 in Department 6 of the above-entitled court. Plaintiff Armando Cerda appeared by counsel Ty Kharazi, Esq. Defendants Northern California Carpenters Regional Counsel and Jason Phillips appeared telephonically by counsel Kristina Hillman, Esq. Defendant United Brotherhood of Carpenters and Joiners of America appeared by counsel Kathleen Jorgenson, Esq. Having considered the moving, opposition, and reply papers, as well as the arguments of counsel and the Court's file, the Court issues the following order.

/////

1

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Armando Cerda alleges tort claims against the Northern California Carpenters Regional Council ("NCCRC"), one of its employees, Jason Phillips, and the United Brotherhood of Carpenters and Joiners International ("Brotherhood"). The Brotherhood is the parent organization to NCCRC.

Cerda was a worker for an employer who was being picketed to try and organize the employees to unionize. The employer obtained an injunction against the picketers and ultimately the situation turned violent. Plaintiff was struck by defendant Jason Phillips resulting in hearing loss. Plaintiff sued in State court, proceeded to trial against Phillips and NCCRC and prevailed. During trial, plaintiff first learned that the union parent, Brotherhood, may have been directing actions with the union subsidiary or that Phillips worked for the Brotherhood. NCCRC moved for new trial, which was granted. Plaintiff amended the complaint to add the Brotherhood as a DOE 54. DOE 54 is only alleged in the sixth cause of action for general negligence. Plaintiff alleges the NCCRC and Doe 54 were "negligent in supervising, directing and allowing Janson [sic] Phillips and Does 1-50 in under taking this intimidating technique." The sixth claim also alleges that the defendants "handpicked" Phillips and others for picketing due to their violent tendencies. Plaintiff moved to further amend the complaint, but the Brotherhood removed to Federal Court on May 9, 2005 before plaintiff was permitted to amend.

**ANALYSIS & DISCUSSION**

**A.  Preemption**

Plaintiff argues that Section 301 is not applicable and there is no subject matter jurisdiction for removal. Plaintiff argues the complaint does not raise any federal claims, as it is a straight tort action.

Upon removal, the district court must determine whether it has subject matter jurisdiction and, if not, it must remand. *Dahl v. Rosenfeld*, 316 F.3d 1074, 1076 (9th Cir. 2003). Generally, removal to federal court requires that a federal claim appear on the face of the plaintiff's "well-pleaded complaint." *Dahl v. Rosenfeld*, 316 F.3d at 1076 -1077.   There is, however, an exception to the general "well-pleaded complaint rule"--the "complete preemption doctrine." Complete preemption acknowledges that "the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law." *Id.* at 1077. When the doctrine of complete preemption applies, any claim based on the preempted state law is considered to arise under federal law. *Id.*

The complete preemption exception applies to claims falling within § 301 of the LMRA. *Dahl v. Rosenfeld*, 316 F.3d at 1077; Section 301 of the Labor Management Relations Act, 29 U.S.C. §185 ("Section 301"). Section 301 vests jurisdiction in federal courts over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. §185(a). Although the text of section 301 contains only a jurisdictional grant, the Supreme Court has interpreted it to compel the complete preemption of state law claims brought to enforce collective bargaining agreements. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In addition, although the language of section 301 is limited to "suits for violation of contracts," the Supreme Court has expanded section 301 preemption to include cases the resolution of which "is substantially dependent upon analysis of the terms of [a collective bargaining agreement]." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

Interpretation of a union constitution is within the preemptive force of section 301. In *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Industry v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), the Supreme Court held that a parent union's constitution was a contract between labor organizations within the meaning of Section 301(a), and a federal court had jurisdiction under the section over a suit by a local against its parent international union. *Accord Ackley v. Western Conference of Teamsters*, 958 F.2d 1463, 1476-77 (9th Cir. 1992) (union constitution implicates §301). Thus, the Brotherhood's position is accurate that section 301 preemption is applicable to interpretation of a union constitution.

However, if the claim is plainly based on state law, section 301 preemption is "not mandated simply because the defendant refers to the [collective bargaining agreement] in mounting a defense." *Cramer v. Consolidated Freightways*, 255 F.3d 683, 691 (9th Cir. 2001). A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility. *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d at 691-692:

> If the plaintiff's claim cannot be resolved without interpreting the applicable CBA–as, for example, in *Allis-Chalmers,* where the suit involved an employer's alleged failure to comport with its contractually

3

> established duties--it is preempted. Alternatively, if the claim may be litigated without reference to the rights and duties established in a CBA–as, for example, in *Lingle,*[1] where the plaintiff was able to litigate her retaliation suit under state law without reference to the CBA--it is not preempted. The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.

*Cramer v. Consolidated Freightways, Inc.*, 255 F.3d at 691. In short, "[a] state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a [collective bargaining agreement] that can reasonably be said to be relevant to the resolution of the dispute." *Id.* at 693 (emphasis added).

Indeed, the Ninth Circuit has stressed that, in the context of section 301 complete preemption, the term "interpret" is defined narrowly--it means something more than "consider," "refer to," or "apply." *See Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 -1109 (9th Cir. 2000); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748-49 (9th Cir.1993) ("Preemption is appropriate, however, only when the provisions of a collective-bargaining agreement must be *interpreted*.") (emphasis in original); *Milne Employees Ass'n v. Sun Carriers, Inc.,* 960 F.2d 1401, 1409-10 (9th Cir.1991) (we have examined the collective bargaining agreements to determine whether the employees' claims are preempted, we were not required to interpret them. The term "interpretation" is defined narrowly in this context.), *cert. denied,* 508 U.S. 959 (1993). The Ninth Circuit has acknowledged that the section 301 policies influence the analysis of preemption. "Although the line between reference to and interpretation of an agreement may be somewhat hazy, the totality of the policies underlying § 301-- promoting the arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and protecting the states' authority to enact minimum labor standards--guides our understanding of what constitutes interpretation." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208

---

[1] In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the plaintiff's union had filed a grievance alleging discharge without just cause against her employer pursuant to a CBA at the same time the plaintiff had filed a suit in state court for retaliatory discharge. The Court held that the plaintiff's suit was not preempted: "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 409-10, 108 S.Ct. 1877.

F.3d at 1108 -1109 (citations omitted).

Here, plaintiff alleges a tort claim of negligence (sixth claim) in the supervision and training of defendant Phillips. The Sixth cause of action alleges in pertinent part:

> "Plaintiff believes and thereon alleges that Union was negligent in supervising, directing and allowing Janson [sic] Phillips and Does 1-50 in undertaking this intimidation technique. But for Union supervising its picket lines, Phillips and Does 1-50 would not have crossed onto [employer's] property. They would not have called plaintiff various names, Phillips would not have struck Plaintiff in his left ear.
>
> "Union impliedly allowed, encouraged and instigated the system of intimidation and fear as instituted by one of its leaders' Jason Phillips. Plaintiff believes and there on alleges that Phillips and Does 1-50 were handpicked by the Union to picket [employer] because of their tendancy to be violent, intimidating, brash and rude." (Complaint, Sixth Cause of action.)

Plaintiff argues that defendant's liability is triggered for defendant Brotherhood's independent negligent act of supervision and training. To recover for negligence, a plaintiff must establish: (1) duty; (2) breach; (3) causation; and (4) damages. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1070 (9th Cir. 2001); *Federico v. Superior Court (Jenry G.)*, 59 Cal.App.4th 1207, 1210-1211 (1997) (an employer may be liable to a third party for the employer's negligence in hiring or retaining an employee who is incompetent or unfit.)

Defendant Brotherhood contends that in order to determine its liability for supervision and training, the Court will have to interpret the Brotherhood's constitution.   The union argues that relevant sections of the constitution are: Section 25 (jurisdiction and powers); 26 (jurisdiction and powers of regional councils); and 33-41 (duties of officers of subordinate unions). Other relevant sections are 6A (establishment and restructuring of subordinate unions); 6C (rights to locals and councils); 6D (supervision and trusteeship of subordinate unions); 10H (supervision of subordinate unions).

At oral argument, Brotherhood argued that the union constitution is more than merely relevant. Brotherhood argued that the constitution must be interpreted to determine whether plaintiff's negligence action would be successful.  The constitution must be interpreted to determine what duty the Brotherhood had to supervise the NCCRC. In response, plaintiff argued that section 301 requires the existence of a <u>breach</u> of contract and there is no breach of contract at issue, citing *Textron Lycoming*

5

*Reciprocating Engine Div., Avco Corp. v. United Automobile, Aerospace, Agricultural Implement Workers of America, Intern. Union*, 523 U.S. 653, 118 S.Ct. 1626, (1998). Plaintiff argued he does not allege a breach of contract, and therefore, the Court lacks jurisdiction.

In *Textron,* the union sought a declaratory judgment that its collective bargaining agreement with employer Textron was invalid after Textron announced that it would subcontract out a substantial volume of work, causing half of the union members to lose their jobs. *Id.* at 655, 118 S.Ct. 1626. The union alleged that Textron had fraudulently induced it to sign the agreement by concealing its plans to subcontract work. *Id.* The union did not allege, however, that either it or Textron ever violated the terms of the collective bargaining agreement. *Id.* The Supreme Court ruled the plaintiff union could not bring an action in federal court against the defendant employer seeking a declaration of contractual invalidity due to fraudulent inducement, because neither party had alleged a violation of the contract as required under § 301(a). The Court concluded: "[T]he Union neither alleges that Textron has violated the contract, nor seeks declaratory relief from its own alleged violation. Indeed, as far as the Union's complaint discloses, both parties are in absolute compliance with the terms of the collective-bargaining agreement. Section 301(a) jurisdiction does not lie over such a case." *Id.* at 661-62, 118 S.Ct. 1626.

Plaintiff reads *Textron* too narrowly. *Textron* does not hold that section 301 preemption exists only in the situation of an express breach of contract. *Textron* merely stands for the proposition that "Suits for violation of contracts" under section 301(a) do not include suits that claim a contract is <u>in</u>valid, but suits that claim a contract has been violated. *Textron,* 523 U.S. at 657, 118 S.Ct. at 1629. *Textron* did not overrule, for instance, *Allis Chalmers* which specifically held that the pre-emptive effect of section 301 must extend beyond suits alleging contract violations. *Allis Chalmers*, 471 U.S. at 211 (which held that a state-law tort action against an employer may be pre-empted by § 301, if the duty to the employee that was violated by the tort is created by a collective-bargaining agreement and without existence independent of the agreement.) Thus, contrary to plaintiff's argument, section 301 preemption does not require a claim for breach of a collective bargaining agreement. If the state-law based claims require the interpretation of a collective bargaining agreement, they are preempted.

Plaintiff acknowledges that he will rely upon the union constitution for the Brotherhood's duty in the case. At oral argument, plaintiff acknowledged that having now learned of the union

6

constitution's existence, plaintiff would be using the constitution for the Brotherhood's duty.

Here, the Court agrees that the interpretation of the constitution is necessary to establish the duty between Brotherhood and NCCRC as it relates to the claims alleged by plaintiff. State law based claims which necessitate the interpretation of a union constitution are within the preemptive force of section 301. *United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada, AFL CIO v. Local 334, United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada,* 452 U.S. at 627, 101 S.Ct. at 2553 ("We do not need to say that every contract imaginable between labor organizations is within § 301(a). It is enough to hold, as we do now, that union constitutions are."); *see also Childs v. Local 18, IBEW*, 719 F.2d 1379, 1383 n.2 (9th Cir. 1983) (courts engage in an examination of union constitution in order to determine an international's liability for the acts of a subordinate body.)

At oral argument, plaintiff also argued that the constitution would not be interpreted because "it speaks for itself."

The interpretation of a contract is often shown by the acts and conduct of the parties subsequent to the execution of the contract and prior to its controversy. [Citations.]" *Meadows v. Lee,* 175 Cal.App.3d 475, 483, 221 Cal.Rptr. 22 (1985). The plain language of the contract is merely the starting point of contract interpretation. *California Union Ins. Co. v. American Diversified Sav. Bank*, 948 F.2d 556, 558 (9th Cir.1991) (starting place for contract interpretation is plain meaning of contractual language). *See, e.g., Cappa v. Wiseman,* 469 F.Supp. 437, 439-40 (N.D.Cal.1979) ("Restricting the interpretation of a collective bargaining agreement to its express terms is extremely unrealistic in circumstances where, as here, the parties have not actually negotiated the agreement themselves, but have attempted to adapt the terms of an industry-wide agreement to conditions in the workplace of a relatively unique ... independent employer."), *aff'd,* 659 F.2d 957, 960 (adopting the reasoning and decision of the district court on the merits).

The Court does not agree that the Brotherhood constitution "speaks for itself." The constitution consists of some 93-pages. Brotherhood has cited to multiple applicable provisions which may affect the duty it owed to plaintiff. For instance, one applicable provision states:

"The United Brotherhood of Carpenters and Joiners of America shall

7

> have the right to establish supervision over and to conduct the affairs of any subordinate body (including the removal of an or all officers of such subordinate body) . . . or to protect the interests and rights of the members or whenever the affairs of the subordinate body are conducted in such a manner as to detrimental to the welfare of the members . . ." (Constitution, §6D, p.5-6.)

Interpreting this provision solely by its express terms is unrealistic. Plaintiff acknowledges that the constitution will be relied upon to establish the duty. Thus, the Court finds that the constitution will be interpreted to determine the Brotherhood's duty to plaintiff. Accordingly, the state tort claims are preempted.

**B.    Notice of removal**

Plaintiff's argument that removal is untimely is without merit. A party has 30 days from service to remove an action. 28 U.S.C.A. § 1446 ("The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . ."). The time for removal cannot be extended. *But see Commercial Computer Serv. v. Data point Corp*, 641 F.Supp. 1579, 1581 (MD La. 1986) (30 day period extended where last day following service is a Saturday.)

Defendant knew about the case or was served on April 7, 2005. The thirtieth day after service was a Saturday and next court day is May 9, 2005, the date defendant filed notice of removal. Thus, removal is timely.

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion to remand the case to state court.

IT IS SO ORDERED.

**Dated:    June 24, 2005**                      /s/ Lawrence J. O'Neill
b9ed48                                            UNITED STATES MAGISTRATE JUDGE